IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LOWELL McGUINNESS,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | **Civil No. TMD 13-1573** |
| v. | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| Defendant. | * | |
| ************ | | |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
<u>ALTERNATIVE MOTION FOR REMAND</u>**

Lowell McGuinness ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment or Alternative Motion for Remand (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 17).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's Alternative Motion for Remand (ECF No. 15) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I
## Background

Plaintiff was born in 1964, has an eighth- or ninth-grade education, and previously worked as a laborer.  R. at 58, 80, 205.  Plaintiff applied protectively for DIB and SSI on May 22, 2009, alleging disability beginning on January 1, 2004, due to endocarditis, hepatitis C, anemia, intravenous drug abuse, pneumonia, and an inability to read and write well.  R. at 175-82, 196, 201.  The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 103-06, 108-15, 119-24.  On June 17, 2011, ALJ Frances Kuperman held a hearing in Baltimore, Maryland, at which Plaintiff and a vocational expert ("VE") testified.  R. at 68-102.  On March 28, 2012, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset date of disability of January 1, 2004.  R. at 50-67.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on May 3, 2013.  R. at 1-6, 24-47.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On May 31, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

A.      **State Agency Medical Consultants**

On September 17, 2009, L. Robbins, M.D., a state agency medical consultant, assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 573-80.  Dr. Robbins opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 574.  Plaintiff occasionally could climb, balance, stoop, kneel, crouch, and crawl.  R. at 575.  Plaintiff had no manipulative, visual, communicative, or environmental limitations.  R. at 576-77.  Dr. Robbins found that Plaintiff's "statements regarding his limitations are judged partially credible.  The medical evidence does not suggest he has difficulty getting around, OR that he is in pain.  So these complaints are not substantiated."  R. at 578.

On December 4, 2009, S. Boyer, Ph.D., evaluated on a psychiatric review technique form ("PRTF") Plaintiff's mental impairments under paragraph B of Listings 12.02 and 12.09 relating to organic mental disorders and substance addiction disorders.  R. at 593-606.  Dr. Boyer opined that Plaintiff's mental impairments of learning disorder, not otherwise specified; borderline intellectual functioning; opioid dependence; cocaine abuse; and alcohol abuse caused him to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration.  R. at 594, 601, 603.  Dr. Boyer did not find evidence to establish the presence of the criteria under paragraph C of these Listings.  R. at 604.  Accordingly, Dr. Boyer assessed Plaintiff's mental

RFC (R. at 589-92) and opined that he was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) make simple work-related decisions; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (9) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (10) respond appropriately to changes in the work setting; and to (11) set realistic goals or make plans independently of others. Plaintiff otherwise was not significantly limited. R. at 589-90. Dr. Boyer's RFC assessment thus provided:

> [Plaintiff] has mild limitations in performing [activities of daily living]. Trouble sleeping due to pain, dressing difficulty (bending/lifting arms), can't get in & out of bath tub, needs reminders to care for personal hygiene, doesn't prepare meals because he can't remember how, no chores, goes out daily, drives, shops in stores for food [two times a week], able to pay bills & count change, doesn't have accounts, watches tv, doesn't spend time [with] others.
>
> [Plaintiff] has moderate restrictions in social functioning. Limited knowledge of social norms and substance abuse may diminish his social interaction and adaptation.
>
> [Plaintiff] has moderate restrictions in concentration, pace and persistence. Able to understand and follow simple instructions independently. Generally functioning in the Borderline range of intelligence. Exhibited weakness in spelling and reading and a relative strength in math. [Plaintiff] has a [history] of poor judgment and may function best with tasks that require little or no independent decision making.
>
> Title II: Insufficient Evidence prior to [date last insured] of 03/31/2005.

4

R. at 591.

On July 13, 2010, another state agency medical consultant, P.H. Moore, M.D., again assessed Plaintiff's physical RFC. R. at 631-38. Dr. Moore opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 632. Dr. Moore also opined that Plaintiff occasionally could climb, balance, stoop, kneel, crouch, and crawl, but had no manipulative, visual, communicative, or environmental limitations. R. at 633-35.

**B.     VE Testimony**

The VE opined that Plaintiff was functionally literate. R. at 99. According to the VE, Plaintiff's past work as a laborer ranged from unskilled to semi-skilled and from heavy to very heavy.[2] R. at 98. A hypothetical person of Plaintiff's same age, education, and work experience limited to light,[3] unskilled, routine, and repetitive work with limited contact with people could work as a housekeeper or laundry worker. R. at 98. Sedentary[4] jobs available to someone with a sedentary RFC but further limited to unskilled, routine, and repetitive work with limited contact with people included work as a packer or inspector. R. at 101. An inability to bend, along with

---

[2] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d). "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." *Id.* §§ 404.1567(e), 416.967(e).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

the ability to sit for only two hours and stand for only two hours in a day, would not be consistent with competitive employment. R. at 101.

## III

## Summary of ALJ's Decision

On March 28, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of January 1, 2004; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a housekeeper or laundry worker. R. at 55-63. The ALJ accordingly found that he was not disabled from January 1, 2004, through the date of the decision. R. at 63.

In so finding, the ALJ found that Plaintiff's hepatitis C with elevated liver enzymes, obesity, intravenous heroin drug abuse, borderline intellectual functioning, and extremely low reading abilities were severe impairments. R. at 56. The ALJ then found:

> [Plaintiff's] mental impairments, including the substance use disorder, do not meet or medically equal the requirements of listings 12.05, or 12.09. Before even turning to the criteria of paragraphs A through D, I must look at whether there is significantly sub-average general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> There is no IQ testing of record performed before [Plaintiff] was age 22. Though [Plaintiff] only has an eighth grade education, he was not in Special Education in school. Additionally, he testified that he quit school in order to help his mother because his father was an "abusive drunk." [Plaintiff] was sent for IQ testing with Melinda B. Stein, Ph.D. on November 2, 2009, at the age of 45. . . . Though [Plaintiff] denied heroin use on the November 2, 2009 test date, his credibility with respect to his heroin use is suspect. Furthermore, it is clear

>   that he was actively using heroin and alcohol at the time of the testing, whether it was actually used on the day of the testing or not. The results of WAIS-III IQ testing was as follows: Verbal IQ of 73; Performance IQ of 74; and, Full Scale IQ of 60. Dr. Stein diagnosed [Plaintiff] with borderline intellectual functioning and learning disorder. . . .
>
>   In light of [Plaintiff's] ongoing substance abuse, I find that the Full Scale IQ of 60, in particular, is not a reliable indication of his functioning when substance free. It is quite possible that [Plaintiff's] IQ scores, as well as his reading ability, increase significantly when he is substance free for an extended period of time. In light of the fact that [Plaintiff] did not have any Special Education in school, I find it unlikely that [Plaintiff's] mental retardation manifested before the age of 22. Therefore, Listing 12.05 cannot be met.

R. at 56-57; *see* R. at 581-88.

The ALJ further found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is further limited to: repetitive, routine, unskilled work; limited contact with people; and, he cannot reliably work eight hours a day, forty hours a week." R. at 57. The ALJ also found that, if he stopped substance use, Plaintiff would continue to have a severe impairment or combination of impairments, but that "the remaining mental limitations would not meet the requirements of Listing 12.05, for the same reason Listing 12.05 is not met with substance use." R. at 59. The ALJ found that, if Plaintiff stopped substance use, he would have the RFC to perform light work further limited to occasional bending, stooping, climbing, balancing, and kneeling; repetitive, routine, and unskilled work; and no more than occasional contact with people. R. at 59.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period

of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work

activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42

U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff maintains that the ALJ failed to follow the special technique (the psychiatric review technique or "PRT") outlined in 20 C.F.R. §§ 404.1520a and 416.920a for evaluating mental impairments at steps two and three of the sequential evaluation process.  Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 15-1.  The Commissioner asserts that the ALJ's error was harmless.  Def.'s Mem. Supp. Mot. Summ. J. 13-21, ECF No. 17-1.  As discussed further below, the Court does not find the error to be harmless and remands this case for further proceedings.

In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  These

regulations require application of the PRT at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

When a claimant has presented a colorable claim of mental impairment, the ALJ is required "to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1214

(11th Cir. 2005) (per curiam)); *see* 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)). "In other words, the regulations contemplate that written decisions at the ALJ and Appeals Council levels should contain a 'narrative rationale,' instead of the 'checklist of . . . conclusions' found in a PRTF." *Keyser*, 648 F.3d at 725 (alteration in original).

With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[*a*]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1). "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction." *Id.* Moreover, "[*s*]*ocial functioning* refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.* § 12.00(C)(2). Further, "[*c*]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). "On mental status examinations,

concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100. In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits." *Id.* Finally, "[e]*pisodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4). "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

    Here, the Commissioner contends that the ALJ's error in failing to apply the PRT in this case at steps two and three of the sequential evaluation process was harmless because the ALJ's evaluation of Plaintiff's impairments fulfilled the purposes of the technique and because the Court can readily determine the reasons for the ALJ's decision. Def.'s Mem. Supp. Mot. Summ. J. 14, ECF No. 17-1. However, "[b]ecause the ALJ's decision lacks consideration of these factors and their impact on [her] ultimate conclusion as to [Plaintiff's] RFC, [the Court] cannot even evaluate the Commissioner's contention that the ALJ's error was harmless." *Moore*, 405

F.3d at 1214; *accord Cuthrell v. Astrue*, 702 F.3d 1114, 1118 (8th Cir. 2013) ("Here, the ALJ specifically found that [the claimant] has the severe impairment of a closed-head injury, with symptoms that are (as discussed) mental in nature.  Given that finding, the ALJ's failure to complete the PRT is not harmless."); *Kohler v. Astrue*, 546 F.3d 260, 267 (2d Cir. 2008) (Sotomayor, J.) ("Effective review by this Court is frustrated by the [ALJ's] decision's failure to adhere to the regulations."); *Craft v. Astrue*, 539 F.3d 668, 675 (7th Cir. 2008); *Owens v. Astrue*, No. PWG-09-899, 2011 WL 1135759, at *2-3 (D. Md. Mar. 24, 2011) (determining that ALJ's failure at step two to document application of criteria in 20 C.F.R. § 416.920a warranted remand); *cf. Felton-Miller*, 459 F. App'x at 231 ("The ALJ concluded that [the claimant's] depressive disorder was a severe impairment at step two of the sequential process without discussion of the special technique.  *At step three, the ALJ listed the four functional areas and analyzed the impact of [the claimant's] depressive disorder on these areas*.  The decision discusses the medical records relevant to [the claimant's] treatment for depression in assessing her mental RFC.  We conclude that the ALJ assessed [the claimant's] mental RFC in accordance with regulations." (emphasis added)).  *But see Pepper v. Colvin*, 712 F.3d 351, 365-67 (7th Cir. 2013) (under some circumstances, failure to use explicitly special technique may be harmless error); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657 (6th Cir. 2009) (holding that "the special technique of § 404.1520a does not confer such an 'important procedural safeguard' upon claimants that an ALJ's failure to rate the B criteria will rarely be harmless").  Remand in this case for the ALJ to apply the PRT in 20 C.F.R. §§ 404.1520a and 416.920a accordingly is warranted.

The Commissioner contends, however, that *Baker v. Chater*, 957 F. Supp. 75 (D. Md. 1996), is persuasive and applicable here.  In *Baker*, this Court addressed whether the ALJ's

Case 1:13-cv-01573-TMD   Document 18   Filed 09/29/14   Page 16 of 17

failure to submit a PRTF under the regulations then in force would necessarily constitute reversible error if it were clear from the ALJ's decision that the ALJ had evaluated the impairment properly. *Baker*, 957 F. Supp. at 79. In that case, the ALJ considered the claimant's alleged impairments of chronic alcoholism and depression, but found that no mental impairment was involved. *Id.* at 79-80. Accordingly, this Court found that completing a PRTF would have been an unnecessary formality. *Id.* at 80. By contrast, the ALJ in this case found that Plaintiff's impairments, including his borderline intellectual functioning, were severe but neither met nor equaled a listed impairment. R. at 56-57, 59. The Commissioner's reliance on *Baker* thus is unavailing.

Despite the Commissioner's arguments, the Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). In other words, "[l]ong-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009); *see Ai Hua Chen v. Holder*, 742 F.3d 171, 180 (4th Cir. 2014) (reviewing court must judge propriety of agency action solely by grounds invoked by agency). Rather, "[t]he ALJ must accompany [her] decision with sufficient explanation to allow a reviewing Court to determine whether the Commissioner's decision is supported by substantial evidence." *Wiley v. Astrue*, Civil Action No. 1:07-00221, 2008 WL 4446679, at *6 (S.D.W. Va. Sept. 26, 2008). "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of her decision a statement of the reasons for that decision." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th

Cir. 1986). The ALJ's decision "should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam). The duty of explanation is satisfied "[i]f a reviewing court can discern 'what the ALJ did and why [she] did it.'" *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999). For these reasons, the Court remands this case for the ALJ to comply with 20 C.F.R. §§ 404.1520a and 416.920a. Because the Court concludes that the ALJ committed an error of law, the Court does not address Plaintiff's remaining arguments. *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 342 n.3 (4th Cir. 2012) (holding that ALJ committed legal error and accordingly declining to address ALJ's credibility findings or likely weight of evidence on remand).

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 17) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**. Plaintiff's Alternative Motion for Remand (ECF No. 15) is **GRANTED**. A separate order shall issue.

Date: September 29, 2014                             /s/
                                                   Thomas M. DiGirolamo
                                                   United States Magistrate Judge